BUCKLEY v. BUCKLEY.

1. FRAUD—EVIDENCE—SUFFICIENCY.
    In an action for fraud in the purchase by defendant from plaintiff of stock in a corporation of which defendant was president and general manager and owner of more than 80 per cent. of its stock, the evidence presented an issue of fact as to defendant's fraud, which was properly submitted to the jury.[1]

2. SAME—GREAT WEIGHT OF EVIDENCE.
    In said action, a verdict in favor of plaintiff is not against the great weight of the evidence.[2]

3. SAME—TRIAL—INSTRUCTIONS AS TO WITHHOLDING INFORMATION.
    An instruction in said action that if the jury should not

---

[1]Corporations, 14 C. J. § 1094; [2]Appeal and Error, 4 C. J. § 2838.
    On duty of director of corporation toward one from whom he purchases stock, see note in L. R. A. 1916B, 708.
    On duty of purchaser of corporate stock to verify statements made as to its financial condition, see note in 14 L. R. A. (N. S.) 1176.

find that the sale of the stock was induced by false statements, they could still consider and determine whether or not defendant by his silence, or by withholding information, failing to disclose any material facts, deceived or defrauded the plaintiff, was, under the peculiar circumstances of the transaction, not erroneous.[3]

4. SAME—CORPORATION OFFICER WITHHOLDING MATERIAL INFORMATION FROM STOCKHOLDER GUILTY OF FRAUD.

Although it is the general rule that in the purchase and sale of corporate stock between stockholders there must be some actual misrepresentation in order to constitute fraud, yet where the president and general manager, who proposes to purchase a stockholder's stock, undertakes, in response to the stockholder's request, to give him information, but withholds facts materially affecting the value of the stock, he is guilty of fraud.[4]

5. SAME—NO DUTY ON INJURED PARTY TO USE DILIGENCE IN DISCOVERING FRAUD.

No duty to use diligence in discovering a fraud is imposed on the injured party.[5]

6. SAME—RELIANCE UPON REPRESENTATION—INSTRUCTION.

An instruction that, to constitute actionable fraud, the jury must find that the plaintiff did in fact rely upon the representations of defendant, and that he did not rely upon his own judgment or upon anything else, was, in the absence of a specific request upon the subject, sufficient.[6]

Error to Kalamazoo; Weimer (George V.), J.  Submitted January 22, 1925.  (Docket No. 70.)  Decided April 3, 1925.

Case by Edward W. Buckley against Frederick J. Buckley for fraud in the purchase of corporate stock. Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Harry C. Howard,* for appellant.

*Mason & Sharpe,* for appellee.

[3]Corporations, 14 C. J. § 1094; [4]Id., 14a C. J. § 1896; [5]Fraud, 26 C. J. § 59; [6]Corporations, 14 C. J. § 1094.

CLARK, J. This is an action for damages for fraud in the sale and transfer of 50 shares of the capital stock of the Kalamazoo Foundry & Machine Company. There were 800 shares outstanding. Defendant owned 594 shares and his mother 200 shares. Other shares were distributed for purposes of organization. The mother died. Her 200 shares went to three sons, including plaintiff and defendant, and to a daughter, 50 shares to each. Defendant then had 644 shares. He was president and general manager. Plaintiff had not been connected with the company for many years, and was not familiar with its affairs. The company had declared and paid dividends only to accommodate the needs of the mother. Plaintiff was in immediate need of funds to meet his note of $4,500, which had been indorsed by his mother. There was no market, and no market value, for the shares of the close corporation. He requested defendant to purchase and sought information of the value. Defendant, as plaintiff says, undertook to give some information on the subject, but did not make full disclosure of the facts, and stated that the 50 shares were worth but $5,000. Defendant insists that he said that the shares were "worth $5,000 to me." For $5,000 the transfer was made; $4,500 was applied to pay the note; plaintiff received $500 in cash. Later, upon examining a financial statement of the company, plaintiff learned, as he says, that he had been defrauded, and brought this suit in affirmance of the sale and for damages for the fraud.

At the time of transfer, the company had cash, $5,710.69; Liberty bonds, $21,800; U. S. Certificates, $65,000; Thrift Stamps, $33.81, a total in cash or its equivalent of $92,544.50. It had other property, including materials, tools and plant, $67,667.78. Its total assets were $160,212.28. Its liabilities, including sums reserved for Federal taxes and compensa-

tion, were $3,259.93.    Its net assets were $156,952.35.
The evidence tended, therefore, to show a value per
share of approximately $196.    Plaintiff had been paid
$100 per share.    Plaintiff's counsel point out that at
the time of the transfer of the stock the corporation
could have declared and paid a dividend from the
cash or its equivalent of $100 per share, or $80,000,
and after payment have had left the plant, tools,
equipment, materials, accounts receivable, etc., and a
net working capital or balance in cash of approxi-
mately $12,000.    Plaintiff had verdict and judgment,
$3,835.34.    Defendant brings error.

1. Plaintiff's testimony of the representations of
value made by defendant, coupled with the evidence
of the then financial condition of the company, as
against defendant's testimony, made an issue of fact
as to the fraud, which was properly submitted to the
jury.    Its verdict is not against the great weight
of the evidence.    *Stewart* v. *Harris*, 69 Kan. 498 (77
Pac. 277, 66 L. R. A. 261, 2 Ann. Cas. 873, 105 Am.
St. Rep. 178) ; *Oliver* v. *Oliver*, 118 Ga. 362 (45 S.
E. 232).

2. Error is assigned on the following from the
charge:

"If the defendant knowingly misstated, misrepre-
sented the value or worth of the stock in question,
and the plaintiff relied upon it, relied upon such mis-
statement, misrepresentation, and was induced to sell
his stock for less than it was fairly worth, then he
should recover at your hands in some amount.    If
you do not find that the transaction, that is, the sale
of the stock, was induced by false statements, you may
still, of course, consider and determine whether or not
the defendant by his silence, or by his withholding
information, failing to disclose any material facts,
deceived or defrauded the plaintiff."

It is urged that the last sentence of the excerpt is
erroneous; citing *Walsh* v. *Goulden*, 130 Mich. 531,
where it is said:

"Directors, of course, stand in a fiduciary relation to the corporation itself.   They do not stand in that relation, however, when dealing with other stockholders for the purchase or sale of stock.   In the purchase and sale of stock between stockholders there must be some actual misrepresentation in order to constitute fraud.   Mere silence is not sufficient."

This general rule, obtaining here and in many other jurisdictions (14A C. J. p. 128) is subject to modification in certain exceptional cases.   *Bollstrom* v. *Duplex Power Car Co.*, 208 Mich. 15; *Strong* v. *Repide*, 213 U. S. 419 (29 Sup. Ct. 521, L. R. A. 1916B, 713, note). A principle underlying the general rule is that the books of the corporation are open to all stockholders alike, and each may inform himself of the condition of the company.   The special circumstances producing exceptional cases seem to be an assured sale, merger, or other fact or condition enhancing the value of the stock, known by the officer or officers, not known by the stockholder, and not to be ascertained by an inspection of the books.   The case at bar is not within this exception.   But the rule has been qualified further.   In *Poole* v. *Camden,* L. R. A. 1917E, 988 (79 W. Va. 310, 92 S. E. 454), it was held, quoting syllabus:

"But a director or managing officer of a corporation does sustain such fiduciary relationship to a stockholder of a corporation as to require of him when proposing to purchase his stock, and he is called upon for information as to the property and financial condition of the corporation, and its plans and purposes for the future, and for all other facts affecting the value of such stock, and he offers his opinion thereon, and undertakes to give some information peculiarly within his knowledge as such director or officer, he is bound at his peril, and upon penalty of having the sale rescinded, to give full and correct information, and to withhold nothing from such stockholder affecting the value of his shares."

In the case at bar, plaintiff from experience was able to judge of the visible assets of the company at the plant where the bargain was made, but he did not know, as he says, of the other assets. He sought of the defendant, personally, information as to the financial condition of the company. Defendant undertook to give information. He spoke of the amount of bills receivable. They were discussed as being large in amount. He stated the book value of the stock as reported by him to the appraisers of the probate court. But he did not disclose, it is claimed, that the company had the comparatively large fund of cash or its equivalent. Had he made such disclosure, it is hardly to be believed that plaintiff would have accepted the offer to purchase. In these circumstances, and under the holding last above quoted, the jury might have found defendant, president and general manager of the company, guilty of fraud in failing to disclose and in withholding information sought by plaintiff, a stockholder. The instruction is not erroneous.

3. Defendant testified that plaintiff had opportunity to examine the books of the company, but did not, and that he did see a financial statement of the company for a prior year.

Defendant requested an instruction to the effect that if plaintiff had an opportunity to examine the books and financial statements of the company, and did not, he could not recover. But no duty to use diligence in discovering a fraud is imposed on the injured party. *Yanelli* v. *Littlejohn,* 172 Mich. 91.

4. Probably, defendant would have been entitled, had he so requested, to an instruction that if plaintiff in making the bargain did not rely upon the representation made to him by defendant, but relied upon information obtained from other sources, he could not be heard to claim that he had been defrauded by defendant. *Craig* v. *Hamilton,* 118 Ind. 565 (21 N.

E. 315).    The court, in setting forth the elements of fraud (*Candler* v. *Heigho*, 208 Mich. 115), and upon the subject of reliance upon the representation, instructed the jury that to constitute actionable fraud they must find—

"that the plaintiff did in fact rely upon it (the representation) ; that he relied upon that; did not rely upon his own judgment or upon anything else." * * *

This instruction respecting reliance upon the representation was clearly sufficient, in the absence of a specific request upon the subject.

We have examined all questions raised.    No reversible error appears.

Judgment affirmed.

McDONALD, C. J., and BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.    SHARPE, J., did not sit.