## Lomman v. Lieb

306

*Englehart, Larimer & Englehart,* for plaintiffs.
*Swope & Swope,* for defendants.

McDONALD, J., March 15, 1965.—Plaintiffs filed a complaint in equity against Henry J. Lieb, "an agent, employee, officer and/or servant" of The First National Bank of Barnesboro, herein referred to as bank, and the bank. Plaintiffs were the owners of 53 shares of stock in the bank, which they had been trying to sell over a two and one-half year period. On May 8, 1964, at the request of defendant Lieb, they sold the stock to him at $70 per share. They aver that at the time of sale, the bank and Lieb knew "negotiations were underway" with The First National Bank of Ebensburg, which had proposed the purchase of outstanding stock for $200 a share; and that they were not advised by the directors, officers or employees of the bank of said negotiations. On June 11, 1964, the bank's Board of Directors accepted the offer and it was approved finally by the stockholders on August 27, 1964. Plaintiffs aver they could not have discovered the negotiations from an inspection of the books and records of the bank.

Plaintiffs ask that defendant Lieb and the bank be required to account for the proceeds of the sale and pay

over to them all sums received in excess of $70 per share. They also request that the bank "enjoin defendant, Henry J. Lieb, from assigning said stock to The First National Bank of Ebensburg until such accounting has been filed and approved."

Defendants have filed preliminary objections in the nature of a demurrer, contending plaintiffs have failed to state a cause of action against them, since they did not allege (1) any misrepresentation, fraud or coercion on the part of Henry J. Lieb or the bank, (2) the bank was a party to the transaction.

The principal thrust of the complaint is that Henry J. Lieb, as an officer or employe of the bank, and the bank, have breached a fiduciary duty by failing to inform plaintiffs at the time of the stock purchase, of the negotiations with The First National Bank of Ebensburg.

There are three rules which govern transactions of officers and directors of a corporation with individual shareholders. The first, referred to as "the majority rule," holds that an officer or director owes a duty to the corporation but not to the individual stockholders, and he may deal with them at arms' length. He is under no duty to disclose information which he had obtained through his position in the corporation. The second, known as "the minority rule," holds an officer or director is in a fiduciary capacity to the stockholders individually or collectively, and he will not be permitted to profit at the latter's expense by use of information obtained as a result of his official position and duties. Under this rule he must disclose the facts which will permit a stockholder dealing with him to exercise his best judgment in selling or purchasing stock. The third, adopted by many states which previously followed the majority rule, is referred to as "the special facts or circumstances rule." Under this rule, where special facts or circumstances are present which make it in-

equitable for the director or officer to withhold information from the stockholder, there is a quasi-fiduciary duty to disclose and concealment is constructive fraud: 3 Fletcher Cyc. Corp. §§1167-1174.

While our review of the cases in Pennsylvania indicates an acceptance of the special facts or circumstances rule, Binns v. Copper Range Company, 335 Pa. 257, it is clear that the purchase of shares of stock from a shareholder by an officer or director of the corporation does not of itself, in the absence of special circumstances, create a fiduciary relationship: Krumbhaar v. Griffiths, 151 Pa. 223; Klerlein v. Werner, 307 Pa. 16; Binns v. Copper Range Company, supra.

There are no definitive decisions in Pennsylvania on what may constitute special circumstances, although as indicated above, this phrase is set forth in Binns. The cases in this and other jurisdictions indicate the special circumstances relied upon to raise a limited fiduciary duty must depend upon development of the facts. In these cases, which incidentally are based upon fraud or deceit, there were alleged misrepresentations or acts of concealment, of the stock value, and/or the purchaser, of matters which would have affected the value of the stock: Krumbhaar v. Griffiths, supra; Klerlein v. Werner, supra; Moore v. Steinman Hardware Co., 319 Pa. 430; Binns v. Copper Range Company, supra; Imbrie v. Community Loan Company, 131 Pa. Superior Ct. 398; Strong v. Repide, 213 U. S. 419, 29 S. Ct. 521; Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 159 P. 2d 958; Taylor v. Wright, 69 Cal. App. 2d 371, 159 P. 2d 980; Jaynes v. Jaynes, 98 Cal. App. 2d 447, 220 P. 2d 598; Haussler v. Wilson, 164 Cal. App. 2d 421, 330 P. 2d 670 (the latter four are California cases).

In the California cases above, although decided on misrepresentations and/or acts of concealment, there are dicta which indicate, in accord with the principles

of honesty and fair dealing, that an officer or director who is buying from or selling to a shareholder "... must inform him of those matters relating to the corporate business of which the officer has knowledge and which the shareholder has a right to know about, so that the latter may have the benefit of such information in judging the advantages of the deal.": Hobart v. Hobart, supra. This purports to be the definition of the "special facts" rule, and is reemphasized in Taylor v. Wright, supra, Jaynes v. Jaynes, supra, Haussler v. Wilson, supra. This broad definition, which would appear to be dicta, since the facts in the above cases show misrepresentation and acts of concealment, is a starting point from which we may evolve in accord with the modern trend in transactions between officers and directors and shareholders, what may be the rule in Pennsylvania.

Acceptance of the broad general definition as set forth in the California cases raises the inevitable question, the answer to which is not aided by the facts in the Pennsylvania cases: When does an officer or director, purchasing stock from a shareholder, cease dealing at arm's length and become a quasi-fiduciary?

To rely on the bland statement that he must disclose information to the shareholders of matters relating to corporate business, which the shareholder has a right to know and which information will enable him to judge the benefits of the transaction, would place upon the purchaser the burden of deciding what a shareholder has a right to know (and perhaps result in disclosure of corporate plans which require confidential negotiations for the best interest of the corporation), and to second-guess the seller on what information he may have or could have ascertained in order to judge the benefits of the transaction. We view the California definition as a hybrid of the minority rule and the special facts rule. As stated, it would require a volun-

tary disclosure, upon penalty of liability for failure to do so, of matters which may bring about a breach of the officer's loyalty to the corporation. Rather than a quasi-fiduciary duty, in requiring voluntary disclosures it seems to impose a full-fledged fiduciary obligation upon an officer or director in his dealings with a shareholder.

We are firmly convinced there must be a limitation which will demarcate an arm's length transaction by an officer or director with a shareholder, from one under a quasi-fiduciary relationship.

Defendants point out this limitation should be ". . . an assured sale, merger, or other fact or condition enhancing the value of the stock, known by the officer or officers, not known by the stockholder, and not to be ascertained by an inspection of the books.": 3 Fletcher Cyc. Corp. §1171; Buckley v. Buckley, 230 Mich. 504, 202 N. W. 955. Arguing the key word is "assured," they point out the averments of the complaint indicate negotiations between bank and The First National Bank of Ebensburg were not firm until June 11, 1964, at which time the directors accepted the latter's offer, and not final until approval of that action by the stockholders on August 27, 1964. In such case, defendants contend, there was no assurance that the negotiations would result in an agreement or "assured sale" until June 11, one month after the stock was purchased. Therefore, the parties were dealing at arm's length and Lieb assumed the risk of failure which could have resulted in a loss, or at least the purchase of stock for which there was no market.

This rule, and defendants' argument, are reasonable. Otherwise it would be hazardous for an officer or director to purchase stock from a shareholder at any time the former had information of any circumstances, or tentative corporate plans, which might subsequently affect the value of corporate stock. Thus, tentative

plans and preliminary negotiations which are not firm or certain of successful completion, but which may affect the value of stock, would, under a contrary rule, seriously inhibit stock purchases or sales by an officer or director. As pointed out above, the requirement of voluntary disclosure of such matters, which might very well be of a confidential nature in the best interests of the corporation, would allow an officer or director only two courses; i.e., to violate his loyalty to the corporation by a disclosure, or to refrain from stock transactions. This latter course may impose an undue hardship, since quite often in corporate affairs there is a diversity of prospective plans, programs, and even of negotiations which may or may not be culminated successfully.

We conclude, therefore, the "assured sale, merger, etc. . . ." rule is a reasonable and equitable one, and the shareholder who claims a breach of the aforesaid limited fiduciary duty by an officer or director from whom he purchases or to whom he sells corporate stock, must be required to allege and prove the special circumstances relied upon were such as would with certainty result in profit to the seller or purchaser.

The word, "negotiations," used in the complaint, may have different meanings under different circumstances. Thus, in this case, if as a matter of fact at the time the stock was sold the acceptance by the directors and approval by the shareholders of the offer made by The First National Bank of Ebensburg was a mere formality, and Lieb as an officer of the bank had knowledge of this through his position, then the special circumstances doctrine may apply, especially if this information was confidential, not recorded on books available to the stockholder, and not discoverable upon diligent inquiry. While this is, to our knowledge, a case of first impression in Pennsylvania, we believe there would be a limited fiduciary duty on the part of Lieb

to voluntarily disclose those facts which with certainty would affect stock value.

As applied here, it would be necessary for plaintiffs to allege and prove that Lieb as an officer of the bank knew the offer would be accepted and the merger of the banks was assured. If this information was available to plaintiffs, and they failed to make diligent inquiry, especially since here it is not alleged there was a misrepresentation or act of concealment, their claim would fail.

The complainant alleges Lieb is an officer and/or employe of the bank. Our discussion heretofore relates only to a possible limited fiduciary duty which an officer or director may bear to a shareholder under special circumstances. We are not convinced, although this question will not be ruled out until we have had an opportunity to examine the facts, that an employe of a corporation may bear such a relationship to a stockholder. While our research discloses no recent cases, early cases in other jurisdictions would indicate an employe of a corporation owes no limited fiduciary duty to a shareholder in purchasing the latter's stock: Stout v. Cunningham, 33 Idaho 464, 196 Pac. 208; Woodruff v. Cole, 307 Mo. 19, 269 S. W. 599.

On this question, the Delaware case of Brophy v. Cities Service Co., 70 A. 2d 5 (Del. Ch.), cited by plaintiffs, is inapposite. In that case it is significant the shareholder's suit was brought on behalf of the corporation, and not by plaintiffs as individuals. Defendant was in a confidential "executive" position, wherein he obtained information of future corporate activities which would enhance the value of its stock. Acting on this information, he acquired stock through third parties for his own benefit. These facts would have resulted in a like holding in Pennsylvania in view of the fiduciary duty owed to an employer or principal by an employe or agent in possession of confidential informa-

tion gained through his employment or agency. The general rules of agency would in such case raise a trust relationship.

The corporation is an entity separate and distinct from the body of shareholders. It holds title to property, and is managed by officers and directors, although subject to the influence a shareholder may exert on that management and its policies by voting his shares of stock. The employes and agents of the corporation are hired by the corporation and not the stockholders. In certain circumstances, as indicated in Brophy, they may occupy a position of trust and confidence to the corporate entity. However, it would seem to be an unwarranted extension of the officer-director limited fiduciary rule to hold that an employe of the corporation may also under certain circumstances owe this duty to a shareholder.

It is not averred the bank was a party to the sale and purchase of plaintiffs' stock. Paragraph 8 of the complaint avers that at the time of sale the bank knew of and failed to advise plaintiffs the negotiations were pending with The First National Bank of Ebensburg. Plaintiffs then demanded that it refuse to register the stock on its stock register book.

The sale and purchase of stock, even though by officers and/or directors of a corporation, is not an essential corporate function. In the absence of proof or averment of collusion, or that the purchase was made by or on behalf of the bank, there is no fiduciary duty on its part to advise shareholders of any information which may affect the value of its stock. To hold otherwise would place an intolerable burden on a corporation to inquire into all such stock transactions and determine if each party had full knowledge of all facts which may influence or deter a sale and purchase.

Nor is a demand that it refuse to register a certificate regularly endorsed and presented, sufficient to

create a trust relationship, and in breach thereof, to impose liability. In fact, refusal to register stock transfers on its books might very well result in liability to the person presenting a properly endorsed certificate.

Summary judgment by way of demurrer should be entered only in a very clear case. If a pleading can be amended to state a cause of action, this should be allowed: Quaker City Chocolate and Confectionery Company v. Delhi-Warnock Building Association, 357 Pa. 307; Brown v. T. W. Phillips Gas and Oil Company, 365 Pa. 155; Lacy v. East Broad Top Railroad and Coal Co., 168 Pa. Superior Ct. 351.

We are satisfied the complaint wholly fails to state a cause of action against the bank, and from the averments indicating it was not a party to the transaction, we conclude it would be impossible to amend. Therefore, the preliminary objections as to defendant bank must be sustained.

However, plaintiffs may be able to amend the complaint in accordance with the above discussion specifically to state a cause of action against defendant Lieb. We, therefore, will allow them an opportunity to amend.

ORDER

Now, March 15, 1965, after argument and upon consideration of the pleadings and briefs, it is hereby ordered:

1. The preliminary objections filed by First National Bank of Barnesboro, defendant, are sustained, and the complaint dismissed.

2. The preliminary objections filed by Henry J. Lieb, defendant, are sustained, and the complaint dismissed, unless within 20 days from the date hereof the complaint is amended to state a cause of action.